MARK D. DOLIN
101 EULU STREET
WAILUKU, HI 96793
TEL 808-344-1005
WEBSITE WWW.SHOPFACEBOOK.COM
EMAIL SUPPORT@SHOPFACEBOOK.COM

FILED
2017 OCT 19 AM 9:11

CLERK
CIRCUIT COURT
STATE OF HAWAII

IN THE CIRCUIT COURT OF THE SECOND CIRCUIT

STATE OF HAWAII

MARK D. DOLIN

PLAINTIFF

VS.

FACEBOOK INC.

DEFENDANT

CIVIL NO. 17-1-0395 (1)
~~(CASE ID)~~

(title of document)
THIRD AMENDED COMPLAINT;
SUMMONS

**RECEIVED BY:**
Print First Name Paul
Print Last Name Young
Date 10/23/17

Forward to Facebook Legal Department

I hereby certify that this is a full, true and correct copy of the Original.

_____
Clerk, Second Circuit Court

EXHIBIT A

## Third Amended Complaint

**Complaint:**

1.) The Plaintiff obtained the domain name www.shopfacebook.com April 12th, 2015

2.) Facebook threatened the Plaintiff with a cease and decist letter Novemeber 3rd, 2016. If he did not stop using his domain www.shopfacebook.com he would face a lawsuit.

3.) Plaintiff made numerous email attempts to contact Facebook legal in an effort to resolve, all attempts went unanswered.

4.) Facebook threatened the Plaintiff with a second cease and decist letter Decemeber 2nd, 2016. If he did not stop using his domain www.shopfacebook.com he would face a lawsuit.

5.) Plaintiff made numerous email attempts over a six month period. Plaintiff stated multiple times that he preferred a civil resolution that was fair for both parties. All attempts went unanswered. Plaintiff claims estoppel

6.) Plaintiff made a connection on his own behalf May 5th, 2017 with an employee who is head of research at Facebook named Mr. John Boyd. Plaintiff stated the issue to Mr. Boyd and that Facebook was being unresponsive. Mr. Boyd told plaintiff he was the wrong person to handle the issue. He directed the Plaintiff to a Nikkya Willams in Facebook's legal department and said she agreed to help and it's now between the two of you to resolve.

7.) Plaintiff was unsuccessful in reaching a resolution outside the courts because Nikkya Williams lack of response, misleading emails and long periods of silence leading nowhere. Plaintiff claims estoppel.

8.) Plaintiff has continually used his domain name www.shopfacebook.com within Facebook since April 15th, 2015 for his business model shopping on Facebook. Plaintiff claims laches for defendant "sleeping on its rights" and allowing ongoing use.

9.) Throughout the years Facebook, has assisted Mr. Dolin in building his shopping platform, encouraged his work, both by direct phone conversations and with emails since August 7th, 2015

10.) Facebook has been communicating to Plaintiff through the obvious email address support@shopfacebook since December 15th, 2015. Plaintiff claims laches for defendant "sleeping on its rights" and allowing ongoing use.

11.) Facebook has profited from Plaintiff's work since May 29th 2015 totaling $2097.04. Facebook has restricted the Plaintiff from succeeding by restricting progress causing negligent interference, this amount becomes a direct loss.

12.) None of Plaintiff's work, which included using his domain name, had ever been an issue until Facebook released their own similar product titled Marketplace on October 3, 2016. Plaintiff claims laches for defendant "sleeping on its rights" and allowing ongoing use. Plaintiff also claims negligent interference.

13.) None of Plaintiff's work, which included using his domain name, had ever been an issue until Facebook released their own similar product titled Instagram Shopping on November 2nd, 2016. Plaintiff claims laches for defendant "sleeping on its rights" and allowing ongoing use. Plaintiff also claims negligent interference.

14.) Nikkya Williams stated June 12th 2017 to Plaintiff through email that his shopping platform was acceptable and the only issue Facebook had was with the use of Plaintiff's domain name www.shopfacebook.com

15.) Contridicting Facebook's own statement that no issue consists with Plaintiff's shopping platform, Facebook is altering the layout design by removing all pictures, making Plaintiff's shopping platform, less desirable, less appealing and harder to navigate from original

design. This is malicious action of aggressive behavior causing negligent interference.

16.) Also contridicting Facebook's own statement that no issue consists with Plaintiff's shopping platform, Facebook has removed tech support for all of the Plaintiff's 2200 pages as of Nov 3rd, 2016, the exact date of the first letter to cease and decist.  This is malicious action of aggressive behavior causing negligent interference.

17.) A person from Facebook named Cody called Mr. Dolin on Friday, August 7, 2015 and asked Mr. Dolin, "What are you building?"  Mr. Dolin said he built a shopping platform hopefully to sell ad space for products linked to his Facebook business pages.  Cody wasn't sure how to answer but did say, "It's impressive.  I hadn't seen anything like it." Cody indicated he would inform people above him about the Plaintiff's platform and be in touch again on Monday. On Monday, August 10, 2015 a woman named Eileen emailed on behalf of Cody and claimed to be head of marketing. Eileen informed the Plaintiff that selling ads would not be allowed because that is what Facebook does and how Facebook makes money.  Eileen then went on to tell the Plaintiff he could link to his own website to sell products.  Well before the discussions with Cody and Eileen the plaintiffs business pages (some 1000 at that time) were already clearly using the domain www.shopfacebook.com in all cover photos and the page website address sections within Facebook. It was clear that managers from "above" in Facebook we're looking over the pages and could see the domain name being used through Mr. Dolin's shopping platform.

18.)  Since May 29th 2015 the Plaintiff has run ads for nealy all of the Plaintiff's 2200 unique business pages, Facebook reviewed each page ad before it gets approved. Pages are reviewed before approval to make sure there are no violations; make sure ads meet guidelines and policies; and regulate trademark infringements. The Facebook policy page specifically describes cover photos and text as being part of the review and approval process.  Of the nearly 2200 page ads approved by Facebook, the Plaintiff clearly used his domain name in the cover photos (impossible to miss) and in the "about us" sections in approximately 1000 of the 2200 business pages. The domain name Shopfacebook is still present and being used to this day on nearly 1000 pages. Not one of the 2200 individual or different business pages were ever disapproved. Plaintiff claims laches for defendant "sleeping on its rights" and allowing ongoing use. Plaintiff also claims estoppel. Defendant continues to allow future use of his domain without restriction, resolution or communication proving estoppel and lache claims are evident.

19.)  Plaintiff argues that any ads approved by Facebook using the Plaintiff's domain name is a form of consent. Facebook's ongoing acceptance and approval of the use of Plaintiff's domain name is further evidence that the Plaintiff's use of his domain was acceptable. Plaintiff claims estoppel

20.)  On November 13, 2015, the Plaintiff heard on CNBC that Facebook was now offering a deal where you could send Mark Zuckerberg $100 through his messenger to insure your message gets to him directly. On

5

that very day the Plaintiff sent $100 to Mark Zuckerberg through messenger. In his message, the Plaintiff asked Mr. Zuckerberg to review his shopping platform completely and requested a response from Mr. Zuckerberg to determine if there was anything that would prevent Mr. Dolin's shopping platform from succeeding. The Plaintiff never heard back from Mr. Zuckerbrerg and Mr. Zuckerberg kept the Plaintiff's money.  This is just another example of Facebook deliberately avoiding the Plaintiff's use. Plaintiff notes possible fraud if defendant recieves money for nothing.


21.) On December 2, 2015 the Plaintiff spoke with a woman by phone named Hailey who claimed to be with Facebook's Global Marketing. The phone call was about technical issues regarding page names. During the conversation Hailey showed interest in what the Plaintiff had built.  The Plaintiff asked Hailey if she had time to review the shopping platform to see if anything stood out that would restrict the shopping platform from success.  Mr. Dolin also asked if a meeting could be set up with Facebook to discuss it further. Here is Hailey's exact email response, "Hi Mark.  Thanks for being on the phone with me. I did review your page further, but as I mentioned, I didn't see anything against our policies.  You are definitely using our pages in a very unique way.  As I mentioned, I'm not able to set up a meeting, but I will forward your information.  Please let me know if there is anything else I can do for you.

22.) Sometime within the week prior to receiving the trademark letter, the Plaintiff had achieved a milestone.  Mr. Dolin learned how to

connect Paypal to his checkout process so his customers could purchase products directly from his Facebook camping category pages all linkable through his Shopfacebook domain.  By reaching this milestone, it meant he could start making money from all his efforts invested in building the shopping platform.  Plaintiff retains evidence showing numerous dated materials proving the camping pages including the main categories and sub categories were shared and organized within the platform as early as March, 2016.  In reality pages we're being created and used in early 2015 and this can be proven with other dated materials, such as personal Facebook posts with date stamps. Plaintiff's dated materials show a much earlier prior use to Facebook's Marketplace and Instagram introduction.

23.)  The Plaintiff claims that Facebook has allowed long ongoing use of his domain www.shopfacebook.com within Facebook without restriction.  Plaintiff claims estoppel.

24.)  The Plaintiff spent 568 days, April 15, 2015 to Nov 3rd 2016, dedicating an average of 12 hours per day, equating to 6,816 hours building his shopping platform and using the his domain name within Facebook. 6,816 hours multiplied by median hourly web developer rates of $50 equates to $340,800. Facebook has restricted the Plaintiff from succeeding by restricting progress causing negligent interference, this amount becomes a direct loss.

25.)  Plaintiff turned down an offer of $500,000 for being insufficient from venture capital investors in Spain named "Insight Networks (a Swiss Verein)".  Facebook has restricted the Plaintiff from succeeding by restricting progress causing negligent interference, any potential future offers from investors become lost value.

26.) The defendant Facebook fails to follow through with defending their trademark or providing a response with the Plaintiff. Plaintiff claims estoppel.

27.) The defendant, Facebook choses not to display the symbol TM in any of the Facebook logo's throughout the internet making it hard to decipher that a trademark exists.

28.) According to Facebook's registration for trademark on the United States Trademark and Patent Office, they define their goods and services as, "providing online marketplaces for sellers of goods and/or services", proving Shopfacebook is being used towards Facebook's original intent.

29.) Considering the Plaintiff's prior progress and timing of events, the Plaintiff claims the defendant is acting in a way to deter, rather then help Plaintiff's forward progress. The Plaintiff suggests it is reasonable to conclude Facebook used the Plaintiff as beta testing to benefit their own product releases. Because of Facebook's agressive behavior towards altering Plaintiff's shopping platform, Plaintiff is no longer positioned to succeed. Facebook has restricted the Plaintiff from succeeding by restricting progress causing negligent interference.

30.) On July 6th, 2016 Facebook debuts a new Conference for Women. The plaintiff sends an email to the sign-up email address womenpm@gmail.com on the very same day July 6th, 2016. Deborah Liu (important name to remember) Co-founder of women in product and product manager for platform monetization at Facebook announced that it would hold its first conference for women with a

8

group of women September 13th, 2016. Here is the exact email Plaintiff sent dated July 6th, 2016...

(Beginning of email)

To whom it may concern,

We are seeking permission for our daughter Penelope Dolin (9) to attend the women in product conference September 13th 2016. She would be chauffeured to and from the event & escorted during the whole event by an adult (her auntie) Beverly Dolin. Penelope lives in Hawaii and because of the associated cost with her travel, we want to make sure it's acceptable in advance? Penelope is a young entrepreneur, Facebook assistant page manager & platform creator. As her father, it would mean a great deal having her attend, building her skills working and learning from other women. She is well mannered and well educated. I have included a picture of Penelope and the app her and I have worked on creating together over the past two years.

Sincerely,

Mark & Pamela Dolin (parents)
808-344-1005

Beverly Dolin (auntie)
510-910-2911

(End of email)

Included in the above email was a picture of Plaintiff's daughter Penelope Dolin and a picture of the "Shopfacebook App", showing in

advance of what had become a comparative replica of Facebook's Marketplace.   The Plaintiff never recieved a response from the sign-up email womenpm@gmail.com.  The plaintiff is claiming July 6th, 2016 is an important date, starting a timeline of events, showing Facebook using the Plaintiff and his work for their own Marketplace product.  This is another example of Facebook, or people highly ranked within Facebook deliberately avoiding the Plaintiff and the use of his domain.

31.)  The plaintiff then followed up with another email to womenpm@gmail.com on August 29th, 2016 not understanding why his email was going unanswered.  Plaintiff has discovered Deborah Liu's involvement with Expanding Your Horizons Network, a Fundraiser supporting girls in tech.  Why would someone such as Deborah Liu or anyone from women in product ignore an email denying Plaintiff's daughter's participation in the very thing they support?  Regardless of the reason, a follow-up email explaining why or why not would have been normal.  Here is the exact email Plaintiff sent dated August 29th, 2016...

(Beginning of email)

Below I have included the original unanswered email sent July 6th regarding the women in product conference...

Penelope is a unique and motivated young entrepreneur who I believe can gain a great deal from attending this conference. Please let us know!

Mark Dolin
-------- Original Message --------
Subject: Women in Product

10

Date: 2016-07-06 21:44
From: support@shopfacebook.com
To: womenpm@gmail.com

To whom it may concern,

We are seeking permission for our daughter Penelope Dolin (9) to attend the women in product conference September 13th 2016. She would be chauffeured to and from the event & escorted during the whole event by an adult (her auntie) Beverly Dolin. Penelope lives in Hawaii and because of the associated cost with her travel, we want to make sure it's acceptable in advance? Penelope is a young entrepreneur, Facebook assistant page manager & platform creator. As her father, it would mean a great deal having her attend, building her skills working and learning from other women. She is well mannered and well educated. I have included a picture of Penelope and the app her and I have worked on creating together over the past two years.

Sincerely,

Mark & Pamela Dolin (parents)
808-344-1005

Beverly Dolin (auntie)
510-910-2911

(End of email)

Again, This is another example of Facebook, or people highly ranked within Facebook deliberately avoiding the Plaintiff and the use of his domain.
32.)  On June 6th, 2017 the Plaintiff sent Nikkya Williams an email describing enough detail of his plan for the shopping platform and how

11

linking products from Facebook business pages to Plaintiff's shopping platform works. The specific details can be found in the Plaintiff's patent application titled, "Facebook Shopping, Search & Linking Platform" ( application No. 62/208,727) filed August 23, 2015. In an article dated August 18th, 2017 Deborah Liu stated that businesses would now be able to have their content directly added to marketplace. For businesses selling products content will be pulled from Pages. To add products, businesses add content or inventory to the Shop area of their Pages. That will get pulled into Marketplace automatically. Facebook sees a mix of both offline and e-commerce transactions through Marketplace. Listings pages enable buyers and sellers to communicate when an offline transaction is contemplated, but Facebook will manage the transaction for e-commerce purchases. Listing fees and transaction fees are also potential money-making scenarios. At high enough volume levels, these could make considerable revenue for the company. Plaintiff claims these are the ideas detailed in his application for patent and in the email sent to Nikkya Williams June 6th, 2016, months in advance of the Deborah Liu article. This is another example of Facebook, or people highly ranked within Facebook deliberately avoiding the Plaintiff and the use of his domain. Plaintiff claims his ideas we're being used for their own comparative product Marketplace and including Instagram Shopping.


33.) On September 14th, 2017 Facebook announces longtime vice president of platform, Deborah Liu will turn all her attention to Marketplace, the shopping and listing feature the social network introduced last October 2016 (exactly 30 days prior to Plaintiff's cease and desist letter). This news enlightens Plaintiff to a reasonable reason why the Co-founder Deborah Liu of women in product never returned emails.

34.) Plaintiff claims the reason nobody with women in product returned Plaintiff's email's is because Deborah Liu Co-founder of

women in product was using Plaintiff as beta for there own Marketplace developement, including Instagram shopping. This is the same reason Facebook was non-responsive and unwilling to communicate with the Plaintiff.  It is reasonable and without doubt to believe that ongoing and continual non-email responses happened because a conflict of interest in Plaintiff and Defendants comparative products we're taking place. This is another example of Facebook, or people highly ranked within Facebook "deliberately" avoiding the Plaintiff and the use of his domain.

## Demand for relief

The Plaintiff demands $10 Billion for relief from Facebook. Plaintiff claims negligent interference.  The Plaintiff is now adding in this thrid ammended complaint tortious interference for using Plaintiff's ideas and work preventing Plaintiff from bringing his idea to fruition. Facebook has dismantled Plaintiff's work and created an environment where success is unlikely and no longer trusts the defendant.  The defendant knew of the existence of the relationship and use of the Plaintiff's domain and was aware or should have been aware that if it did not act with due care and its actions would interfere with this relationship and cause plaintiff to lose in whole or in part the probable future economic benefit or advantage of the relationship. Taking Plaintiff's money and allowing him to continue building something that would enevitibly not succeed...there was detrimental reliance. Plaintiff also claims estoppel, that Facebook took unreasonable and inexcusable delay in filing suit, prejudice to the Plaintiff, the Plaintiff believes defendant had abandoned its claims of infringement.  There are plenty of examples of Facebook stealing ideas from small business start-ups leaving little more than grist. Facebook is being accused by Plaintiff as a

monopolist mill, hijacking the economic value of his work to benefit themeselves. Mr. Dolin has also unnecessarily suffered stress which has greatly affected his life physically, financially and mentally.

The Plaintiff is valuing his platform at $10 Billion based on what Facebook paid for lessor money generating businesses titled Instagram ($1 Billion) and Whatsapp ($19 Billion).

**Jury Demand**

Plaintiff demands a Jury on all claims.

DATED 10-19-17 _____*[signature]*_____
Mark D. Dolin

| | |
|---|---|
| MARK D. DOLIN </br></br> PLAINTIFF </br></br> VS. </br></br> FACEBOOK INC. </br></br> DEFENDANT | (CASE ID) </br></br> (title of document) </br></br> SUMMONS |

## SUMMONS

### TO THE ABOVE NAMED DEFENDANTS:

You are hereby summoned and required to file with the court and serve upon the plaintiff Mark D. Dolin whose address is 101 Eulu Street Wailuku, Hawaii 96793, an answer to the thrid amended Complaint which is herewith served upon you, within (20) days after service of this SUMMONS upon you, exclusive of the day of service. If you fail to do so, judgement by default will be taken against you for the relief demanded in the third amended complaint.

Pursuant to Rule 4(b) of the Hawai'i Rules of Civil Procedure, this summon shall not be delivered between 10:00 p.m. and 6:00 a.m. onpremises not open to the public, unless a judge or the District of Circuit courts permits, in writing on the summons, personal delivery during those hours.

If you fail to obey this summons, this may result in an entry of default and default judgement against the disobeying person or party.

DATED   Wailuku, Maui Hawai'i,_____OCT 1 9 2017_____

/sgd/ V. ISHIHARA (seal)

_____

CLERK OF THE ABOVE-ENTITLED COURT