IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| MARK D. DOLIN,<br><br>             Plaintiff,<br><br>     vs.<br><br>FACEBOOK, INC.,<br><br>             Defendant. | Civ. No. 17-00515 JMS-RLP<br><br>ORDER GRANTING DEFENDANT'S MOTION TO TRANSFER VENUE PURSUANT TO 28 U.S.C. § 1404(a), ECF NO. 9 |

**ORDER GRANTING DEFENDANT'S MOTION TO TRANSFER VENUE PURSUANT TO 28 U.S.C. § 1404(a), ECF NO. 9**

**I.  INTRODUCTION**

Before the court is Defendant Facebook, Inc.'s ("Facebook" or "Defendant") "Motion to Transfer Venue Pursuant to 28 U.S.C. § 1404(a) and/or Motion to Dismiss Pursuant to Rule 12(b)(6)." ECF No. 9. For the reasons discussed below, the Motion is GRANTED, and the Clerk of Court is directed to transfer this action to the United States District Court for the Northern District of California.

**II.  BACKGROUND**

**A.     Factual Background**

The Third Amended Complaint ("TAC"), alleges the following. Pro se Plaintiff Mark D. Dolin ("Plaintiff") registered the domain name

"www.shopfacebook.com" on April 12, 2015, and then created thousands of unique "Pages" on Facebook that he incorporated into his development of a larger shopping platform. TAC ¶¶ 1, 9, 16, 18, ECF No. 1-2. Beginning on August 7, 2015, Defendant "encouraged Plaintiff's work" through phone conversations and email communications and confirmed that Plaintiff's shopping platform complied with Facebook policies. *Id.* ¶¶ 9-10, 17, 21. Since May 29, 2015, Defendant has received profits of $2,097.04 from Plaintiff's shopping platform. *Id.* ¶ 11.

On October 3, 2016, Defendant released its own shopping platform titled "Marketplace." *Id.* ¶ 12. And on November 2, 2016, Defendant released "Instagram Shopping." *Id.* ¶ 13. Prior to Defendant's release of these products, Defendant never objected to Plaintiff's use of the "www.shopfacebook.com" domain name. *Id.* ¶¶ 12-13, 21.

In November and December 2016, Plaintiff received letters from Defendant threatening a lawsuit if Plaintiff did not "cease and decist" (sic) from using the "www.shopfacebook.com" domain. *Id.* ¶¶ 2, 4. Plaintiff attempted to contact Defendant repeatedly in order to resolve this issue, but Defendant failed to respond. *Id.* ¶¶ 3, 5-7. As of November 3, 2016, Defendant withdrew "tech support" for all of Plaintiff's "Pages" and began "altering the layout design by removing all pictures," thereby "making Plaintiff's shopping platform less desirable, less appealing and harder to navigate." *Id.* ¶¶ 15-16.

Plaintiff's plan for his shopping platform and specific information about how it would work were "detailed in his application for patent" and in emails Plaintiff sent to Facebook officials prior to the release of Facebook's Marketplace and Instagram Shopping platforms. *Id.* ¶ 32. Plaintiff's ideas were allegedly incorporated in both of Facebook's shopping platforms. *Id.* Thus, the TAC alleges that Facebook "used . . . Plaintiff as beta testing to benefit [its] own product releases." *Id.* ¶ 29; *accord id.* ¶ 34. The TAC asserts claims for "negligent interference," fraud, and "tortious interference," and seeks damages of $10 billion. *Id.* at 13-14.

Defendant now moves to transfer this action to the United States District Court for the Northern District of California based on a forum-selection clause. As set forth in Defendant's Memorandum in Support of its Motion, from April 2015 to the present, users creating a "Page" on Facebook's website or mobile application were presented with a message stating "By clicking Get Started, you agree to the Facebook Pages Terms." Def.'s Mem. at 5-6, ECF No. 9-1; Decl. of Michael Duffey ¶¶ 3-5, ECF No. 9-2; Def.'s Exs. A, B, ECF Nos. 9-3, 9-4. In order to create a "Page," a user was required to click the "Get Started" button. Duffey Decl. ¶ 5. "On both platforms, the phrase 'Facebook Pages Terms' was highlighted and hyperlinked to a webpage that posted the Pages Terms in their entirety." *Id.* ¶ 6.

The Facebook Pages Terms in effect from April 2015 through the present incorporate Facebook's general terms of use, known as the "Statement of Rights and Responsibilities" ("SRR"). Def.'s Mem. at 7; Duffey Decl. ¶ 7, Def.'s Exs. C-F, ECF Nos. 9-4 to 9-8. The term "Statement of Rights and Responsibilities" in the first paragraph of the Facebook Pages Terms is highlighted and hyperlinked to a webpage that contains a copy of the SRR. Duffey Decl. ¶ 7; Def.'s Exs. C-F. The SRR provides in part:

> This Statement of Rights and Responsibilities . . . is our terms of service that governs our relationship with users and others who interact with Facebook, as well as Facebook brands, products, and services, which we call the "Facebook Services" or "Services". By using or accessing the Facebook Services, you agree to this Statement . . . .

Def.'s Ex. G at 1, ECF No. 9-9. And under the section titled "Disputes," the SRR includes the following forum-selection clause:

> You will resolve any claim, cause of action or dispute (claim) you have with us arising out of or relating to this Statement or Facebook exclusively in the U.S. District Court for the Northern District of California or a state court located in San Mateo County, and you agree to submit to the personal jurisdiction of such courts for the purpose of litigating all such claims. The laws of the State of California will govern this Statement, as well as any claim that might arise between you and us, without regard to conflict of law provisions.

*Id.* at 4.

## B. Procedural Background

Plaintiff filed a Complaint and Amended Complaint against Defendant in the State of Hawaii Circuit Court of the Second Circuit on September 18 and 20, 2017, respectively. ECF Nos. 1-4, 1-5. The Amended Complaint was served on September 25, 2017. *See* Decl. of Michael P. Duffey ¶ 3, ECF No. 1-1. Thereafter, Plaintiff filed both a Second Amended Complaint and the TAC. ECF Nos. 1-2 to 1-3. On October 25, 2017, Defendant filed a timely Notice of Removal to this court. ECF No. 1.

Defendant filed the instant Motion to Transfer Venue and/or Dismiss on November 13, 2017. ECF No. 9. Plaintiff filed an Opposition on December 21, 2017, and numerous exhibits on December 29, 2017. ECF Nos. 24, 28. Defendant filed a Reply on January 12, 2018. ECF No. 34. A hearing was held on January 29, 2018.

## III. LEGAL STANDARD

Federal law governs the validity, interpretation, and enforceability of a forum-selection clause. *Doe 1 v. AOL LLC*, 552 F.3d 1077, 1081, 1083 (9th Cir. 2009) (per curiam) (citing *Manetti-Farrow, Inc. v. Gucci Am., Inc.*, 858 F.2d 509, 513 (9th Cir. 1988)); *Argueta v. Banco Mexicano, S.A.*, 87 F.3d 320, 324-25 (9th Cir. 1996). Enforcement, however, is limited to mandatory forum-selection clauses that "clearly designate[] a forum as . . . exclusive." *N. Cal. Dist. Council of*

*Laborers v. Pittsburgh-Des Moines Steel Co.*, 69 F.3d 1034, 1037 (9th Cir. 1995) (declining to enforce permissive clause that did not mandate an exclusive forum); *accord Hunt Wesson Foods, Inc. v. Supreme Oil Co.*, 817 F.2d 75, 78 (9th Cir. 1987). The proper procedure to enforce a mandatory forum-selection clause that specifies a different federal district is a motion to transfer pursuant to 28 U.S.C. § 1404(a). *Atl. Marine Constr. Co. v. U.S. Dist. Ct. for W. Dist. of Tex.*, 134 S. Ct. 568, 579 (2013).[1] Section § 1404(a) provides:

> For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented.

Generally, when considering a § 1404(a) motion to transfer venue, the court "must evaluate both the convenience of the parties and various public-interest considerations." *Atl. Marine Constr. Co.*, 134 S. Ct. at 581; *see In re Rolls Royce Corp.*, 775 F.3d 671, 677 (5th Cir. 2014) (characterizing § 1404(a) factors as "the interest of the litigants, and the interests of the public and judicial system writ large"). "The calculus changes, however, when the parties' contract contains a valid forum-selection clause, which 'represents the parties' agreement as to the

---

[1] "Section 1404(a) is merely a codification of the doctrine of *forum non conveniens* for the subset of cases in which the transferee forum is within the federal court system; in such cases, Congress has replaced the traditional remedy of outright dismissal with transfer." *Atl. Marine Constr. Co.*, 134 S. Ct. at 580 (clarifying that courts may still dismiss a case under the doctrine of *forum non conveniens* when the forum-selection clause points to a state or foreign jurisdiction).

6

most proper forum.'" *Atl. Marine Constr. Co.*, 134 S. Ct. at 581 (quoting *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 31 (1988)). "A proper application of § 1404(a) requires that a forum-selection clause be given controlling weight in all but the most exceptional cases." *Id.* at 579 (internal citation and quotation marks omitted). And the non-moving party bears the burden of showing that exceptional circumstances make transfer inappropriate. *Id.* at 581.

Where faced with a valid forum-selection clause, *Atlantic Marine* instructs courts to alter the usual § 1404(a) analysis by disregarding: (1) the plaintiff's choice of forum; (2) the parties' private interests; and (3) the original venue's choice-of-law rules. *Id.* at 581-82. Rather, because the parties' private interests are deemed to "weigh entirely in favor of the preselected forum," the court "may consider arguments about public-interest factors only."[2] *Id.* at 582. And "because [public-interest] factors will rarely defeat a transfer motion, the practical result is that forum-selection clauses should control except in unusual cases." *Id.*

This analysis, however, "presupposes a contractually valid forum-selection clause." *Id.* at 581 n.5. Thus, in order to defeat transfer, Plaintiff must

---

[2] Public-interest factors include, but are not limited to, "the administrative difficulties flowing from court congestion; the local interest in having localized controversies decided at home; [and] the interest in having the trial of a diversity case in a forum that is at home with the law." *Atl. Marine Constr. Co.*, 134 S. Ct. at 581 n.6 (quoting *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 241 n.6 (1981) (alteration in *Atlantic Marine*).

show that the forum-selection clause is not valid and enforceable or does not apply to his claims, or that § 1404(a) "public-interest factors overwhelmingly disfavor a transfer." *Id.* at 579, 583.

## IV. **DISCUSSION**

### A. The Forum-Selection Clause is Valid and Enforceable

#### *1. Legal Standards Regarding Validity*

In the Ninth Circuit, "a forum selection clause is presumptively valid." *Doe 1*, 552 F.3d at 1083; *accord Murphy v. Schneider Nat'l Inc.*, 362 F.3d 1133, 1140 (9th Cir. 2004). To overcome this presumption, "[t]he party challenging the clause bears a 'heavy burden of proof' and must 'clearly show that enforcement would be unreasonable and unjust, or that the clause [is] invalid for such reasons as fraud or over-reaching.'" *Murphy*, 362 F.3d at 1140 (quoting *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 15 (1972); *accord, e.g.*, *Manetti-Farrow, Inc.*, 858 F.2d at 514 ("Forum selection clauses are *prima facie* valid, and are enforceable absent a strong showing by the party opposing the clause[.]").

"Enforcement is unreasonable and unjust if the clause results from fraud or overreaching; if enforcing the clause would effectively deprive [Plaintiff]

8

of [his] day in court;[3] or if enforcement would contravene a strong public policy of [the forum in which the suit was filed]." *Adema Tech., Inc. v. Wacker Chem. Corp.*, 657 F. App'x 661, 663 (9th Cir. 2016) (citing *M/S Bremen*, 407 U.S. at 12-13, 15, 18) (quotation marks and additional citation omitted); *accord Petersen v. Boeing Co.*, 715 F.3d 276, 280 (9th Cir. 2013). The Supreme Court has also stated that a forum-selection clause may be unreasonable if the moving party failed to give notice of the clause to the party it now seeks to bind. *Carnival Cruise Lines, Inc. v. Shute*, 499 U.S. 585, 595 (1991). These exceptions to enforceability of a valid forum-selection clause must be construed narrowly. *Argueta*, 87 F.3d at 325.

### 2. *Application of Legal Standards to Forum-selection Clause*

#### a. *Fraud or overreaching*

To establish the invalidity of a forum-selection clause based on fraud or overreaching, Plaintiff must "show that the *inclusion of that clause in the contract* was the product of fraud or coercion." *Peterson*, 715 F.3d at 282 (quoting *Richards v. Lloyd's of London*, 135 F.3d 1289, 1297 (9th Cir. 1998) (additional citation omitted). Overreaching includes conduct "short of fraud," *Murphy*, 362 F.3d at 1141, involving "undue influence" or "overweening bargaining power," *Bremen* 407 U.S. at 12.

---

[3] Post *Atlantic Marine*, this consideration must be viewed as a matter of public interest, and cannot be based on Plaintiff's private interests. *See* 134 S. Ct. at 582.

9

Plaintiff does not allege fraud, duress, or undue influence, but he does suggest overreaching by contending that Defendant is a "mega corporation," and he is "unsophisticated" in the law. Opp'n, ECF No. 24-5 at PageID #521. But neither "unequal bargaining power between the parties" nor the lack of opportunity to negotiate, without more, will invalidate a forum-selection clause. *Murphy*, 361 F.3d at 1141 (citing *Carnival Cruise Lines, Inc.*, 499 U.S. at 595). And although Plaintiff acknowledges the existence of the forum-selection clause, to the extent he could be asserting lack of notice at the time he created his "Pages," such argument fails. Courts regularly uphold forum-selection clauses in online user agreements "when the user is given notice of the agreement by clicking a box stating 'I agree to the terms of the User Agreement,' followed by a hyperlink." *Tresona Multimedia LLC v. Legg*, 2015 WL 470228, at *12 (D. Ariz. Feb. 4, 2015); *see, e.g.*, *Segal v. Amazon.com, Inc.*, 763 F. Supp. 2d 1367, 1369 (S.D. Fla. 2011); *Meier v. Midwest Recreational Clearinghouse, LLC*, 2010 WL 2738921, at *3 (E.D. Cal. July 12, 2010); *Beard v. PayPal, Inc.*, 2010 WL 654390, at *3 (D. Or. Feb. 19, 2010); *cf. McKee v. Audible, Inc.*, 2017 WL 4685039, at *6 (C.D. Cal. July 17, 2017) (applying same standard to arbitration clause in online terms of service); *Starke v. Gilt Groupe, Inc.*, 2014 WL 1652225, at *3 (S.D.N.Y. Apr. 24, 2014) (enforcing arbitration clause where plaintiff "was directed exactly where to

click in order to review those terms, and his decision to click the 'Shop Now' button represents his assent to them").

Here, on both the website and mobile application through which Plaintiff created his "Pages," a disclosure statement was located immediately above or below (depending on the platform) the "Get Started" button. *See* Def.'s Exs. A, B, ECF Nos. 9-3, 9-4. The disclosure statement read "[b]y clicking Get Started, you agree to the Facebook Pages Terms." *Id.* And the words "Facebook Pages Terms" were highlighted and served as a hyperlink by which Plaintiff could easily access the complete Pages Terms. *Id.* Further, the first paragraph of the Pages Terms included a statement that incorporated the SRR, which was also highlighted and available in its entirety (including the forum-selection clause) by hyperlink. *See* Def.'s Exs. C-G, ECF Nos. 9-5 to 9-9. Neither the disclosure statement nor the specific terms, including the forum-selection clause, was hidden or otherwise withheld from Plaintiff's consideration.

Under similar circumstances, numerous courts have found Facebook's SRR, and forum-selection clause to be valid. *See, e.g.*, *Franklin v. Facebook, Inc.*, 2015 WL 7755670, at *2 (N.D. Ga. Nov. 24, 2015) ("The Court cannot identify a single instance where any federal court has struck down [Facebook's] SRR as an impermissible contract of adhesion induced by fraud or overreaching[.]"); *Fteja v. Facebook, Inc.*, 841 F. Supp. 2d 829, 835 (S.D.N.Y. 2012) (enforcing forum-

selection clause based on disclosure below "Sign Up" button); *E.K.D. ex rel. Dawes v. Facebook, Inc.*, 885 F. Supp. 2d 894, 900-03 (S.D. Ill. 2012) (imputing "constructive knowledge" of the terms of the SRR to the plaintiffs and finding Facebook's forum-selection clause to be mandatory, reasonable, not in contravention of public policy, and enforceable); *Miller v. Facebook, Inc.*, 2010 WL 9525523, at *1 (N.D. Ga. Jan. 15, 2010) (same). This court agrees and finds that Plaintiff has not shown that the forum-selection clause is invalid based on fraud or overreaching.

        b.      *Plaintiff's day in court*

When considering the second *Bremen* factor, *Atlantic Marine* instructs that courts are not to consider private interests such as cost or inconvenience. 134 S. Ct. at 582 ("When parties agree to a forum-selection clause, they waive the right to challenge the preselected forum as inconvenient or less convenient for . . . their pursuit of the litigation."); *see Adema Tech, Inc.*, 657 F. App'x at 663 (recognizing that after *Atlantic Marine*, courts are precluded from considering private interests such as financial hardship); *see also Kebb Mgmt.,Inc. v. Home Depot U.S.A., Inc.*, 59 F. Supp. 3d 283, 288 (D. Mass. 2014) ("[T]he *Atlantic Marine* decision unequivocally removed any consideration of private interests in the § 1404(a) context when a forum-selection clause is present."); *Monasteiro v. appMobi, Inc.*, 2014 WL 1991564, at *5 (N.D. Cal. May 15, 2014) (explaining that *Atlantic*

12

*Marine* precludes consideration of financial cost and inconvenience when evaluating the second *Bremen* factor).

Here, Plaintiff does not contend that he would effectively be deprived of his day in court if the forum-selection clause is enforced. Thus, the second *Bremen* factor is not met.

        c.      *Hawaii public policy*

The final *Bremen* factor is whether enforcement of the forum-selection clause would contravene a strong Hawaii public policy. Plaintiff does not address this factor at all. He does not allege that transfer of this action would be contrary to any specific Hawaii law or policy. Nor does he allege that forcing him to litigate in California, rather than in Hawaii, would deprive him of a remedy for his claims. Thus, Plaintiff fails to establish this factor.

Based on the foregoing, the court finds that the forum-selection clause is contractually valid.

       **3.**      ***The Forum-Selection Clause Applies to Plaintiff's Claims***

When interpreting a forum-selection clause, phrases such as "arising under," "arising hereunder," and "arising out of" should be construed to encompass "only those disputes concerning 'the interpretation and performance of the contract itself.'" *Henry v. Cent. Freight Lines, Inc.*, 2017 WL 4517836, at *2 (E.D. Ca. Oct. 10, 2017) (quoting *Cape Flattery Ltd. v. Titan Mar., LLC*, 647 F.3d 914, 922

13

(9th Cir. 2011)).  But the phrase "relating to" should be construed "more broadly." *Id.* (citing *Cape Flattery Ltd.*, 647 F.3d at 922); *cf. Manetti-Farrow*, 858 F.2d at 514 ("[F]orum selection clauses can be equally applicable to contractual and tort causes of action.").

Here, the forum-selection clause states that Plaintiff "will resolve any claim, cause of action or dispute (claim) . . . with [Facebook] *arising out of or relating to this [SRR] or Facebook* exclusively in the U.S. District Court for the Northern District of California[.]"  Def.'s Ex. G ¶ 15, ECF No. 9-9.

Plaintiff does not dispute that his tort claims "relate to" Facebook and are covered by the forum-selection clause.  Further, the Complaint's allegations are based on events related to Plaintiff's use of Facebook to create "Pages," Facebook's alleged removal of technical support and content from those "Pages," and Plaintiff's use of a domain name and business name that Facebook asserts is in violation of its Terms and/or SRR.  Plaintiff's claims both "arise out of" and "relate to" Facebook and are therefore covered by the forum-selection clause.  *See Cape Flattery Ltd.*, 647 F.3d at 922, *see also Manetti-Farrow*, 858 F.2d at 514.

Based on the foregoing, the court finds that the forum-selection clause in Facebook's SRR is valid, applicable to Plaintiff's claims, and enforceable.

///

///

**B.      Transfer Pursuant to 28 U.S.C. § 1404(a) is Warranted**

Plaintiff contends that transfer is not warranted as a matter of public policy — specifically, that people should have a chance to resolve disputes informally without being forced involuntarily into litigation.  *See* Opp'n at PageID #535 (arguing that by failing to respond to Plaintiff's attempts to resolve his claims informally, Defendant has forced Plaintiff "unwillingly into litigation").  He contends that because Defendant could have resolved this matter informally, it should not be rewarded for imposing hardship on Plaintiff.  Further, Plaintiff argues that "[t]he forum selection clause . . . wasn't . . . created for the purpose of forcing it upon people when other remedies exist.  Other remedies are simple email communications, a conference call, any such effort where two parties can adjoin and discuss the issue/s and possibly proceed forward acting fair and civil, potentially reaching an agreement to resolve." *Id.*  And finally, Plaintiff contends that striking (or not enforcing) the forum-selection clause "will not wreak havoc on the entire social networking industry[,] . . . will [not] hinder the way history has used such a clause[,] . . . will keep these giants alert and diligent in preventing such claims from arising unnecessarily," and would protect "Facebook and internet users." *Id.* at PageID #536.

Plaintiff's initial contentions — that Defendant should not benefit from its failure to resolve Plaintiff's claims informally, and that Defendant is

15

intentionally imposing a hardship on Plaintiff — relate to the private interests of the parties and are not permissible factors for consideration. *See Atl. Marine Constr. Co.*, 134 S. Ct. at 582 (stating that "a district court may consider arguments about public interest factors only" when ruling on a transfer motion to enforce a forum-selection clause). Nor does Plaintiff provide any authority to suggest that as a matter of public policy, transfer is "overwhelmingly disfavor[ed]" based on a party's failure to engage in informal dispute resolution.

Plaintiff's remaining contentions are purely speculative and lack any legal authority. Plaintiff does not explain how denying enforcement of the forum-selection clause "will keep these giants alert and diligent in preventing such claims from arising unnecessarily." Opp'n at PageID # 536. Nor does he provide context for his statement that ignoring the forum-selection clause "will [not] hinder the way history has used such a clause." *Id.* And Plaintiff's remaining comments appear to be a naked attempt to refute the reasoning set forth by *Miller v. Facebook, Inc.*, which upheld a similar forum-selection clause:

> Even if the court were to assume without deciding that [Facebook's Terms of Use ("TOU")] was a contract of adhesion, striking the forum-selection clause could wreak havoc on the entire social-networking internet industry. If this court were to determine that the forum-selection clause contained in Facebook's TOU was unenforceable, the company could face litigation in every state in this country and in nations around the globe which would have potential adverse consequences for the users of

intentionally imposing a hardship on Plaintiff — relate to the private interests of the parties and are not permissible factors for consideration. *See Atl. Marine Constr. Co.*, 134 S. Ct. at 582 (stating that "a district court may consider arguments about public interest factors only" when ruling on a transfer motion to enforce a forum-selection clause). Nor does Plaintiff provide any authority to suggest that as a matter of public policy, transfer is "overwhelmingly disfavor[ed]" based on a party's failure to engage in informal dispute resolution.

Plaintiff's remaining contentions are purely speculative and lack any legal authority. Plaintiff does not explain how denying enforcement of the forum-selection clause "will keep these giants alert and diligent in preventing such claims from arising unnecessarily." Opp'n at PageID # 536. Nor does he provide context for his statement that ignoring the forum-selection clause "will [not] hinder the way history has used such a clause." *Id.* And Plaintiff's remaining comments appear to be a naked attempt to refute the reasoning set forth by *Miller v. Facebook, Inc.*, which upheld a similar forum-selection clause:

> Even if the court were to assume without deciding that [Facebook's Terms of Use ("TOU")] was a contract of adhesion, striking the forum-selection clause could wreak havoc on the entire social-networking internet industry. If this court were to determine that the forum-selection clause contained in Facebook's TOU was unenforceable, the company could face litigation in every state in this country and in nations around the globe which would have potential adverse consequences for the users of

> Facebook's social-networking site and for other internet companies.

*Id.* at 1.  Plaintiff does not provide any authority to support his contrary, conclusory contention.

## V.  CONCLUSION

In sum, while the court is sympathetic to Plaintiff's desire to resolve his claims informally, he has failed to show that "public-interest factors overwhelmingly disfavor a transfer."  *Atl. Marine Constr. Co.*, 134 S. Ct. at 583.  The forum-selection clause is valid and enforceable, and transfer is warranted.  Accordingly, the court GRANTS Defendant's Motion to Transfer Venue.  The Clerk of Court is directed to transfer this action to the United States District Court for the Northern District of California.

IT IS SO ORDERED.

DATED:  Honolulu, Hawaii, February 6, 2018.



/s/ J. Michael Seabright
J. Michael Seabright
Chief United States District Judge

*Dolin v. Facebook, Inc.*, Civ. No. 17-00515 JMS-RLP, Order Granting Defendant's Motion to Transfer Venue Pursuant to 28 U.S.C. § 1404(a), ECF No. 9