UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| MARK D. DOLIN,<br><br>    Plaintiff,<br><br>vs.<br><br>FACEBOOK, INC.,<br><br>    Defendant. | Case No: C 18-0950 SBA<br><br>**ORDER GRANTING DEFENDANT'S MOTION TO DISMISS AND DENYING PLAINTIFF'S MOTION FOR DECLARATORY JUDGMENT**<br><br>Dkt. 52, 55. |

    Plaintiff Mark Dolin ("Plaintiff") alleges that Defendant Facebook, Inc., ("Facebook") is improperly interfering with his "shopping platform," which he operates under the domain name www.shopfacebook.com. The Fourth Amended Complaint ("FAC"), the operative pleading, alleges state law causes of action for tortious and negligent interference with prospective economic advantage. The Court has diversity jurisdiction over the action. 28 U.S.C. § 1332.

    The parties are presently before the Court on (1) Defendant Facebook's Motion to Dismiss Plaintiff's FAC and (2) Plaintiff's Motion for Declaratory Judgment of Non-Infringement (which the Court liberally construes as a motion for leave to amend). Dkt. 52, 55. Having read and considered the papers filed in connection with this matter and being fully informed, the Court hereby GRANTS Defendant's motion to dismiss and DENIES Plaintiff's motion for declaratory relief. The Court, in its discretion, finds these matters suitable for resolution without oral argument. See Fed. R. Civ. P. 78(b); N.D. Cal. Civ. L.R. 7-1(b).

## I. BACKGROUND

### A. FACTUAL SUMMARY

In April 2015, Plaintiff registered the domain name www.shopfacebook.com, which serves as the centerpiece of a "shopping platform embedded within Facebook" that he claims to own and operate. FAC at 8, Dkt. 46. The platform consists of "highly desirable URL's," such as www.facebook.com/beauty.supplies, www.facebook.com/petsupply, and various other similar permutations. Id. Plaintiff alleges that he "spent 15 hours a day for months" obtaining these addresses and has created 2,027 web pages. Id.

On October 3, 2016, Facebook released its own shopping platform called "Marketplace." Id. at 12. Shortly thereafter, on November 2, 2016, Facebook released "Instagram Shopping." Id. Prior to launching these sites, Facebook was supportive of Plaintiff's shopping platform and never objected to his use of the "www.shopfacebook.com" domain name. Id. at 9, 12. However, on November 3, 2016 and again on December 2, 2016, Facebook sent cease and desist letters to Plaintiff which alleged that the domain name www.shopfacebook.com violates the Lanham Act because it uses Facebook's protected marks. Id. at 8; Pl.'s Opp'n to Not. of Removal, Ex. 6 (copy of the first cease and desist letter), Dkt. 28-6 at 3.

Around the time that it sent its cease and desist letters, Facebook allegedly removed "tech support" and "altered" the layout and design of Plaintiff's Facebook Pages by removing pictures from his shopping platform. Id. at 10-11. Although Plaintiff acknowledges that Facebook "was never required to provide [tech support]," he claims Facebook took such actions to "deter future progress with the Plaintiff's shopping platform" so that it could promote its Marketplace product. Id. at 10-12. Plaintiff claims that Facebook's conduct has left him in "limbo," causing him to suffer "mental distress and financial loss." Id. at 28.

B.   **PROCEDURAL HISTORY**

On September 18, 2017, Plaintiff initiated the instant action by filing a pro se complaint against Facebook in Hawaii state court. See Def.'s Not. of Removal ¶ 1, Dkt. 1. Plaintiff filed an Amended Complaint on September 20, 2017, a Second Amended Complaint on October 4, 2017, and a Third Amended Complaint on October 25, 2017. Id. The Third Amended Complaint ostensibly alleges causes of action for estoppel, laches, negligent interference, tortious interference, and "possible fraud," and seeks $10 billion in damages from Facebook. Dkt. 1-2. On the same day that Plaintiff filed his Third Amended Complaint, Facebook removed the action to the United States Court for the District of Hawaii on the basis of diversity jurisdiction. Id. ¶ 5.

Shortly after removing the action, Facebook filed a motion to transfer venue, or alternatively, to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). Dkt. 9. In moving to transfer, Facebook relied upon the forum selection clause contained in its terms of service, which requires any litigation to be venued in Northern California. On February 6, 2018, Hawaii District Court Chief Judge Michael Seabright granted Facebook's motion to transfer venue. Dkt. 40. In his seventeen-page decision, Judge Seabright ruled, inter alia, that Plaintiff had agreed to Facebook's terms of service, including its Statement of Rights and Responsibilities ("SRR") and therefore was subject to the forum selection clause. Dkt. 40 at 14-16. The case was transferred to this Court on February 14, 2018. Dkt. 41.[1]

After the case was transferred to this District, Plaintiff, without leave of this Court or consent from Facebook, filed his FAC on February 20, 2018. The FAC alleges two causes of action: (1) tortious interference with prospective economic advantage; and (2) negligent interference with prospective economic advantage. Plaintiff continues to demand $10 billion in damages from Facebook. Id. He does not seek any other form of relief. Id. at 27-28.

---

[1] Under the SRR's choice of law clause, Plaintiff's claims are governed by California law. See SRR § 15.1, Dkt. 52-1.

On March 6, 2018, Facebook filed the instant motion to dismiss, pursuant to Rule 12(b)(6). Dkt. 52. On March 14, 2018, Plaintiff filed a motion for declaratory judgment. Dkt. 55. Although the FAC does not allege any claims under the Lanham Act, Plaintiff seeks a declaratory judgment establishing his right to use www.shopfacebook.com and that he has not infringed Facebook's trademarks. Dkt. 55. Both motions have been fully briefed and are ripe for adjudication.[2]

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) "tests the legal sufficiency of a claim." Navarro v. Block, 250 F.3d 729, 732 (9th Cir. 2001). "Dismissal under Rule 12(b)(6) is proper when the complaint either (1) lacks a cognizable legal theory or (2) fails to allege sufficient facts to support a cognizable legal theory." Somers v. Apple, Inc., 729 F.3d 953, 959 (9th Cir. 2013). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). The court is to "accept all factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party." Outdoor Media Group, Inc. v. City of Beaumont, 506 F.3d 895, 899-900 (9th Cir. 2007).

Where a complaint or claim is dismissed, leave to amend generally is granted unless further amendment would be futile. Cervantes v. Countrywide Home Loans, Inc., 656 F.3d 1034, 1041 (9th Cir. 2011). In assessing whether leave to amend is warranted, the Court may consider new facts, if any, presented in an opposition to a motion to dismiss. Broam v. Bogan, 320 F.3d 1023, 1026 n.2 (9th Cir. 2003) ("Facts raised for the first time in plaintiff's opposition papers should be considered by the court in determining whether to grant leave to amend or to dismiss the complaint with or without prejudice."); see also Bonin v. Calderon, 59 F.3d 815, 845 (9th Cir. 1995) (holding that a court may properly deny a motion to amend "where the movant presents no new facts but only new theories

---

[2] On April 9, 2018, attorney Amy Sommer Anderson filed a Notice of Appearance on behalf of Plaintiff. Dkt. 66.

and provides no satisfactory explanation for his failure to fully develop his contentions originally."). The Court also may consider whether the plaintiff has had prior opportunities to amend the pleadings. Chodos v. W. Publ'g Co., 292 F.3d 992, 1003 (9th Cir. 2002).

## III. DISCUSSION

### A. TORTIOUS INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE

The elements of a claim for tortious interference with prospective economic advantage are: "(1) an economic relationship between the plaintiff and some third party, with the probability of future economic benefit to the plaintiff; (2) the defendant's knowledge of the relationship; (3) intentional acts on the part of the defendant designed to disrupt the relationship; (4) actual disruption of the relationship; and (5) economic harm to the plaintiff proximately caused by the acts of the defendant." Korea Supply Co. v. Lockheed Martin Corp., 29 Cal. 4th 1134, 1153 (2003).

Facebook argues that Plaintiff's tortious interference claim is deficient because he has failed to sufficiently allege: the existence of an economic or business relationship with a third party; Facebook's knowledge of any such relationship; Facebook's commission of an independently wrongful act intended to disrupt the relationship; or that Facebook's acts proximately caused him to suffer damage.

#### 1. Economic Relationship with a Third Party

The California Supreme Court has explained that the economic relationship element "has two parts: "(1) an existing economic relationship that (2) contains the probability of an economic benefit to the plaintiff." Roy Allan Slurry Seal, Inc. v. Am. Asphalt S., Inc., 2 Cal.5th 505, 512 (2017). Here, Plaintiff alleges that Facebook interfered with his relationships with: (1) Facebook; (2) "Facebook users"; (3) Michael Rubin; and (4) and Kevin Ham. FAC at 10, 22-23. All of these allegations fail with respect to the economic relationship element.

First, Plaintiff cannot predicate his tortious interference claim on a relationship with Facebook; Facebook is a party-defendant, and hence, is not a third party. See Korea Supply Co., 29 Cal. 4th at 1153.

Second, Plaintiff's reference to "Facebook users" is too ambiguous and speculative to establish the existence of an economic relationship. Plaintiff points to twenty-five Facebook users who purportedly communicated with him through his email account, support@shopfacebook.com, and through Facebook email. Pl.'s Opp'n at 2 (citing Pl.'s Exhs. in Opp'n to Removal Ex. 7, Dkt. 28-7). Because the Court's review on a Rule 12(b)(6) motion is limited to the pleadings, Plaintiff's reliance on extrinsic evidence is improper. United States v. Ritchie, 342 F.3d 903, 907 (9th Cir. 2003) (consideration of extrinsic evidence improper on a Rule 12(b)(6) motion to dismiss). That aside, the possibility that some Facebook users may have communicated with Plaintiff does not ipso facto demonstrate the existence of an economic relationship, let alone one that would likely benefit him economically. See Dooley v. Crab Boat Owners Ass'n, 271 F. Supp. 2d 1207, 1216-17 (N.D. Cal. 2003) ("The economic relationship must be either in the form of a contract or an existing relationship with an identifiable third party.") (citing Westside Ctr. Assocs. v. Safeway Stores 23, Inc., 42 Cal. App. 4th 507, 522 (1996)).[3]

Finally, neither the pleadings nor Plaintiff's opposition demonstrates the existence of an economic relationship with either Messrs. Rubin or Ham. Mr. Rubin is the owner of various on-line retail businesses with whom Plaintiff hopes to meet someday to discuss the possibility of working together. FAC at 22-23. Similarly, Mr. Ham is identified as an individual who allegedly "may be interested in buying the whole shopping platform concept" and hopes "that a meeting 'could' be setup [sic] to discuss further." Id. at 23. At most, these allegations show that Plaintiff aspires to form an economically beneficial relationship with these individuals in the future—not that one currently exists or is likely to come into existence. See Roy Allan Slurry Seal, Inc., 2 Cal.5th at 516 (noting that a tortious interference claim "protects the expectation that the relationship eventually will

---

[3] The FAC also avers that unspecified users who "liked" his Facebook page "probably would have resulted in an economic benefit to the Plaintiff." FAC at 3. This allegation is too speculative to establish an interference with economic advantage claim. See, e.g., Dallas & Lashmi, Inc. v. 7-Eleven, Inc., 112 F. Supp. 3d 1048, 1061 (C.D. Cal. 2015) (noting a "hope of future transactions" is insufficient to support a claim for interference with prospective economic advantage).

yield the desired benefit, not necessarily the more speculative expectation that a potentially beneficial relationship will eventually arise.") (internal quotations and citation omitted); R. Power Biofuels, LLC v. Chemex LLC, No. 16-716 LHK, 2016 WL 6663002, at *16 (N.D. Cal. Nov. 11, 2016) (allegations that plaintiff "was involved in business and economic relationships with major consumers of biodiesel" were "insufficient to sustain the claims alleging an interference with prospective economic advantage"); Universal Grading Serv. v. eBay, Inc., No. C-09-2755 RMW, 2011 WL 846060, at *11 (N.D. Cal. Mar. 8, 2011) (noting that "plaintiff's expectation of future business is 'at most a hope for an economic relationship and a desire for future benefit'") (citation omitted).

### 2. Defendant's Knowledge

A tortious interference claim requires that the defendant have knowledge of the prospective economic relationship with which it is alleged to have interfered. Sole Energy Co., 128 Cal. App. 4th at 241. Plaintiff contends that because Facebook was aware of his shopping platform, it must have also known about his economic relationship with his "users." Pl.'s Opp'n at 12; see also FAC at 8-9. This type of speculative assertion, however, is insufficient to state a claim. Twombly, 550 U.S. at 555 ("The factual 'allegations must be enough to raise a right to relief above the speculative level.'").

### 3. Independently Wrongful Act

"A tortious interference with prospective economic advantage claim … requires that the defendant's conduct be 'wrongful by some legal measure other than the fact of interference itself.'" Name.Space, Inc. v. Internet Corp. for Assigned Names and Numbers, 795 F.3d 1124, 1133 (9th Cir. 2015); see Della Penna v. Toyota Motor Sales, U.S.A., Inc., 11 Cal.4th 376, 393 (1995). "An act is not independently wrongful merely because defendant acted with an improper motive." Korea Supply Co., 29 Cal.4th at 1158. Rather, "an act is independently wrongful if it is unlawful, that is, if it is proscribed by some constitutional, statutory, regulatory, common law, or other determinable legal standard." Id. at 1158-59.

The pleadings allege that Facebook acted wrongfully by sending cease and desist letters to Plaintiff. This claim is undermined by Plaintiff's agreement to abide by Facebook's terms of service, which expressly prohibit the unauthorized use of its marks.[4] In his opposition, Plaintiff does not dispute that he is subject to those terms or that he had agreed to them as a condition to using Facebook to create his alleged shopping platform. Instead, he appears to suggest that the letters may violate section 2 of the Sherman Act because they were part of Facebook's efforts to bolster its own Marketplace platform. Pl.'s Opp'n at 5. This allegation does not appear in the FAC and therefore cannot be considered on a motion to dismiss. See Schneider v. Calif. Dep't of Corrections, 151 F.3d 1194, 1197 n.1 (9th Cir. 1998) ("'new' allegations contained in the [plaintiff]'s opposition . . . are irrelevant for Rule 12(b)(6) purposes"). That aside, the mere fact that Facebook took action to protect its marks, or desired to promote its own products, does not state a claim under the Sherman Act. See Pac. Exp., Inc. v. United Airlines, Inc., 959 F.2d 814, 817 (9th Cir. 1992) (stating elements of a Sherman Act monopolization claim).

Equally unavailing are Plaintiff's ancillary assertions that Facebook engaged in wrongful conduct by not providing "tech support, removing picture from his Facebook page, and using his shopping pages as "beta testing" for its Marketplace business. FAC at 13. Plaintiff concedes that Facebook was not required to provide tech support. Id. at 10. As for his remaining allegations, Plaintiff fails to cite to any factual allegations in the FAC or to any legal authority demonstrating that Facebook's alleged actions constitute

---

[4] On both the Facebook website and mobile application through which Plaintiff created his "Pages," a link to Facebook's terms of service is displayed immediately above or below (depending on the platform) the "Get Started" button. Dkt. 40 at 11. The disclosure statement reads "[b]y clicking Get Started, you agree to the Facebook Pages Terms." Id. The Page Terms incorporate the SRR, which require a user's agreement not to use Facebook's marks. E.g., Def.'s Ex. A (SRR) §5.6, Dkt. 52-1 ("You will not use our copyrights or Trademarks or any confusingly similar marks, except as expressly permitted by our Brand Usage Guidelines or with our prior written permission."). Facebook's Brand Usage Guidelines, in turn, prohibit anyone from "assert[ing] rights over the Facebook brand whether by trademark registration, domain name registration or anything else." Def.s' Ex. B (Brand Usage Guidelines) at 7, Dkt. 52-2. The Brand Usage Guidelines also prohibit the use of "trademarks, names, domain names, logos or other content that imitates or could be confused with Facebook." Id. Plaintiff does not dispute that he is bound by these provisions.

"unlawful" conduct. See Korea Supply Co., 29 Cal.4th at 1158-59. "[T]he failure to sufficiently allege a wrongful act outside of the interference itself forecloses an interference with prospective economic advantage claim." Name.Space, Inc., 795 F.3d at 1134.[5]

### 4. Causation

The fifth and final element of a claim for tortious interference with prospective economic advantage is proximate causation; that is, "a reasonable probability the lost economic advantage would have been realized but for the defendant's wrongful acts." Parlour Enters., Inc. v. Kirin Grp., Inc., 152 Cal. App. 4th 281, 294 (2007). As set forth above, Plaintiff has failed to allege facts sufficient to support his claim that Facebook engaged in any unlawful conduct that interfered or disrupted any business relationship between Plaintiff and a third party. But even if he had, Plaintiff fails to explain or allege any facts from which an inference can be drawn that Facebook's conduct caused him any harm—let alone damages in the amount of $10 billion.

### 5. Summary

Despite the extensive allegations of his FAC, Plaintiff has failed to allege the essential elements of a cause of action for tortious interference with prospective economic advantage. Nothing in the pleadings or Plaintiff's opposition suggests that Plaintiff would be able to cure those deficiencies, particularly given his numerous opportunities to amend his complaint. The Court is thus persuaded that further amendment to the pleadings would be futile and therefore dismisses the instant claim without leave to amend.

### B. NEGLIGENT INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE

A negligent and tortious interference claim have essentially the same elements, except in the former, the plaintiff must prove that the defendant engaged in negligent as

---

[5] Plaintiff also claims that Facebook's purportedly wrongful actions caused him to suffer emotional distress. See FAC at 8; Pl.'s Opp'n at 8. The conclusory allegations of the FAC, however, fail to establish that Plaintiff suffered the requisite "severe" emotional distress. See Hughes v. Pair, 46 Cal. 4th 1035, 1051 (2009) ("Severe emotional distress means emotional distress of such substantial quality or enduring quality that no reasonable person in civilized society should be expected to endure it.") (quotation marks and citation omitted). Moreover, as discussed above, Plaintiff has not established that Facebook undertook any wrongful act.

opposed to intentional conduct. See N. Am. Chem. Co. v. Superior Court, 59 Cal. App. 4th 764, 786 (1997).[6] Here, Plaintiff's claim for negligent interference fails for the same reasons that his tortious interference claim fails. First, the FAC fails to allege the existence of an economic relationship between Plaintiff and a third party, that such relationship contained a reasonably probable future economic benefit, or that Facebook knew of and disrupted such relationship. See Damabeh v. 7-Eleven, Inc., No. 5:12-CV-1739-LHK, 2013 WL 1915867, at *10 (N.D. Cal. May 8, 2013) ("a plaintiff alleging a claim for negligent interference with prospective business advantage must identify with particularity the relationships or opportunities with which Defendant is alleged to have interfered"); Blue Dolphin Charters, Ltd. v. Knight & Carver Yachtcenter, Inc., No. 11-CV-565-L-WVG, 2011 WL 5360074, at*5 (S.D. Cal. Nov. 3, 2011) (finding an "allegation that the defendant interfered with 'speculative' future customers [was] insufficient" to plead negligent interference with prospective business advantage).

Second, Plaintiff fails to plead that Facebook's acts were improper or constituted interference, and that such acts proximately caused him to suffer harm. National Medical Transp. Network v. Deloitte & Touche, 62 Cal. App. 4th 412, 440 (1998) (noting that the independently wrongful act requirement applies to claims for negligent intentional interference with prospective economic relations or advantage). Here, the same conduct forms the basis for both of Plaintiff's interference with prospective economic advantage claims. As discussed above, Plaintiff has failed to show that any of Facebook's alleged conduct was "wrongful" or otherwise proximately caused harm to him.

Finally, Plaintiff's negligent interference claim independently fails based on his failure to demonstrate that Facebook owed him a duty of care. See Lange v. TIG Ins. Co.,

---

[6] "The elements of negligent interference with prospective economic advantage are (1) the existence of an economic relationship between the plaintiff and a third party containing the probability of future economic benefit to the plaintiff; (2) the defendant's knowledge of the relationship; (3) the defendant's knowledge (actual or construed) that the relationship would be disrupted if the defendant failed to act with reasonable care; (4) the defendant's failure to act with reasonable care; (5) actual disruption of the relationship; (6) and economic harm proximately caused by the defendant's negligence." Redfearn v. Trader Joe's Co., 20 Cal. App. 5th 989, 1005 (2018).

68 Cal. App. 4th 1179, 1187 (1998) (noting that a claim for negligent interference "arises only when the defendant owes the plaintiff a duty of care"). A duty of care can arise from a statutory obligation, a contractual relationship, a special relationship between the parties, or because of the general character of the activity in question. Shin v. Kong, 80 Cal.App.4th 498, 504 (2000). "Facts which give rise to the existence of a duty in a complaint for negligent injury are necessary, and a complaint which does not state facts to show that duty is fatally defective." Jacoves v. United Merch. Corp., 9 Cal. App. 4th 88, 113 (1992).

In his FAC, Plaintiff avers that Facebook breached a duty of care by failing to respond to his various messages and attempts to communicate with the company. E.g., FAC at 21. ("Defendant remained silent when Plaintiff requested, help and answers. Defendant failed to provide a reasonable duty of care for 8 months and beyond leaving the Plaintiff in limbo, creating unnecessary mental stress."); see also id. at 4, 11, 26, 28. Yet, the FAC provides no contractual or legal basis for the claim that Facebook had a legal duty to respond to Plaintiff—much less a duty to respond to Plaintiff in the manner he desired and within the timeframe he desired. The Court finds that Plaintiff has failed to demonstrate the requisite duty of care to sustain a claim for negligent interference with prospective economic advantage. E.g., Young v. Facebook, Inc., 790 F. Supp. 2d 1110, 1118 (N.D. Cal. 2011) (finding that Facebook does not have a general duty to "use due care in reasonably addressing . . . account issues").

In sum, Plaintiff has failed to state a claim for negligent interference with prospective economic advantage. Because further amendment to this claim would be futile, said claim is dismissed without leave to amend.

### C. PLAINTIFF'S MOTION FOR DECLARATORY JUDGMENT

Plaintiff seeks a judicial declaration that the domain name www.shopfacebook.com does not infringe Facebook's trademarks. Dkt. 55. Neither the FAC nor any of the four prior complaints filed by Plaintiff alleges a claim under the Lanham Act or for declaratory relief based on non-infringement of Facebook's marks. Nevertheless, since Plaintiff filed his motion while pro se, the Court liberally construes his submission as a motion for leave

to amend under Federal Rule of Civil Procedure 15. See Balistreri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir. 1990) (pro se filings are to be liberally construed).

As a general rule, courts should freely grant leave to amend "when justice so requires." Fed. R. Civ. P. 15(a)(2); Petersen v. Boeing Co., 715 F.3d 276, 282 (9th Cir. 2013) ("[L]eave to amend should be granted with extreme liberality."). "Five factors are taken into account to assess the propriety of a motion for leave to amend: bad faith, undue delay, prejudice to the opposing party, futility of amendment, and whether the plaintiff has previously amended the complaint." Desertrain v. City of Los Angeles, 754 F.3d 1147, 1154 (9th Cir. 2014) (internal quotation and citation omitted). The decision to grant or deny a request for leave to amend rests in the discretion of the trial court. See California v. Neville Chem. Co., 358 F.3d 661, 673 (9th Cir. 2004).

### 1. Futility

Facebook argues that leave to amend should be denied on the grounds that Plaintiff's proposed declaratory relief claim is futile. "Futility of amendment can, by itself, justify the denial of a motion for leave to amend." Bonin, 59 F.3d at 845. A proposed amended complaint is futile if it would be immediately "subject to dismissal." Steckman v. Hart Brewing, Inc., 143 F.3d 1293, 1298 (9th Cir. 1998). The "proper test to be applied when determining the legal sufficiency of a proposed amendment is identical to the one used when considering the sufficiency of a pleading challenged under Rule 12(b)(6)." Miller v. Rykoff-Sexton, Inc., 845 F.2d 209, 214 (9th Cir. 1988).

To prove trademark infringement under the Lanham Act, a trademark holder must prove (1) that it is "the owner of a valid, protectable mark, and (2) that the alleged infringer is using a confusingly similar mark." Grocery Outlet, Inc. v. Albertson's, Inc., 497 F.3d 949, 951 (9th Cir. 2007). Plaintiff does not dispute that Facebook owns a valid and protectable mark that he is using as part of his www.shopfacebook.com domain name.[7]

---

[7] A registered trademark is presumed valid, and the party challenging the validity of the mark bears the burden of overcoming such presumption. See Tie Tech, Inc. v. Kinedyne Corp., 296 F.3d 778, 783 (9th Cir. 2002).

Plaintiff also does not dispute that, pursuant to Facebook's SRR and Responsibilities and Brand Usage Guidelines, he is contractually barred from using Facebook's trademarks or any confusingly similar mark in any domain name registration. Rather, Plaintiff asserts that Facebook knew that he was using the www.shopfacebook.com domain name as part of his shopping platform, and yet, encouraged him to continue his business operations. Pl.'s Mot. for Decl. Relief at 3-5. He claims that it was not until Facebook decided to launch Marketplace that it took exception to his use of his domain name.

Though not entirely clear, it appears that Plaintiff is attempting to assert a claim of trademark non-infringement based on the equitable doctrines of acquiescence, estoppel and/or waiver. As will be discussed below, all of those defenses fail. As such, granting Plaintiff leave to amend to allege a claim for a declaratory judgment of non-infringement would be futile.

### *a)* *Acquiescence*

The defense of acquiescence "limits a party's right to bring suit following an affirmative act by word or deed by the party that conveys implied consent [to use of a mark] to another." Seller Agency Council, Inc. v. Kennedy Ctr. for Real Estate Educ., Inc., 621 F.3d 981, 988 (9th Cir. 2010). A party asserting an acquiescence defense must show that "(1) the senior user actively represented that it would not assert a right or a claim; (2) the delay between the active representation and assertion of the right or claim was not excusable; and (3) the delay caused the defendant undue prejudice." Id. at 989.

Nowhere in his lengthy FAC, motion for declaratory relief or the litany of exhibits he has previously submitted to the Court (in support of his "opposition" to Facebook's earlier removal notice) is there any indication that Facebook informed him that it would not assert a right or claim against him based on its ownership of the Facebook mark. Indeed, the copy of Facebook's cease and desist letter provided by Plaintiff clearly recites Facebook's position that his use of www.shopfacebook.com "violates the Lanham Act" and demands that he cease using that domain name. See Pl.'s Opp'n to Not. of Removal, Ex. 6, Dkt. 28-6 at 3. Nor has Plaintiff alleged any facts showing undue prejudice resulting from

any delay by Facebook in transmitting its cease and desist letters.  See FAC at 18.  Plaintiff's complaint about remaining "in limbo," see id. at 13, is too vague and conclusory to plausibly demonstrate undue prejudice, see Twombly, 550 U.S. at 555.  As such, any attempt to premise a claim of non-infringement on the defense of acquiescence would be futile.

### b) *Estoppel*

To the extent that Plaintiff is attempting to claim non-infringement based on estoppel, such a claim fails, as well.  A defendant in a trademark infringement lawsuit claiming estoppel must show: (1) that the plaintiff knew that defendant was using its protected marks; (2) the plaintiff's actions or failure to act led the defendant to reasonably believe that the plaintiff did not intend to enforce its trademark right against defendant; (3) that defendant did not know the plaintiff actually objected to his use of mark; and (4) due to its reliance on the plaintiff's actions, defendant would be materially prejudiced if the plaintiff is allowed to proceed with its claim of infringement.  See AirWair Int'l Ltd. v. Schultz, 84 F. Supp. 3d 943, 958 (N.D. Cal. 2015) (internal quotations and citation omitted, brackets in orig.).

Plaintiff cannot satisfy the third and fourth elements for non-infringement based on the doctrine of estoppel.  As discussed, the cease and desist letters sent to Plaintiff unequivocally informed him that Facebook objected to his use of www.shopfacebook.com and demanded that he cease using the same.  Thus, even if Plaintiff somehow subjectively believed (based on prior communications with Facebook) that this domain name was not objectionable, Facebook's cease and desist letters clearly placed him on notice that Facebook was, in fact, objecting to his use of its mark.  See id. (rejecting estoppel claim where the plaintiff sent the defendant's predecessor a cease and desist letter demanding that it stop using the plaintiff's protected marks); see also E. & J. Gallo Winery v. Gallo Cattle Co., 967 F.2d 1280, 1294 (9th Cir. 1992) (plaintiff's warning to defendant not to use its name supported the district court's rejection of the defendant's estoppel defense).  Moreover, as noted, Plaintiff has not shown that he suffered any material prejudice as a

result of Facebook's actions. Because Plaintiff cannot prove each element of equitable estoppel, he cannot state a claim for declaratory relief based on non-infringement of Facebook's marks. See Am. Casualty Co. v. Baker, 22 F.3d 880, 892 (9th Cir. 1994) ("Where any one of the elements of equitable estoppel is absent, the claim must fail.") (internal quotation marks omitted).

### *c)* *Waiver*

"Waiver is the intentional relinquishment of a known right with knowledge of its existence and the intent to relinquish it." United States v. King Features Entm'nt, Inc., 843 F.2d 394, 399 (9th Cir. 1988). "Waiver may be express or may be implied from conduct." Air Products & Chemicals, Inc. v. Louisiana Land & Exploration Co., 867 F.2d 1376, 1379 (11th Cir. 1989). "An implied waiver of rights will be found where there is 'clear, decisive and unequivocal' conduct which indicates a purpose to waive the legal rights involved." United States v. Amwest Sur. Ins. Co., 54 F.3d 601, 602-603 (9th Cir. 1995) (citation omitted). Here, Plaintiff has failed to identify any facts evincing a "clear, decisive and unequivocal" intent by Facebook to relinquish any of its trademark rights. To the contrary, the facts presented by Plaintiff establish that Facebook sought to enforce its intellectual property rights by demanding that he cease using the www.shopfacebook.com domain name.

### 2. **Undue Delay and Bad Faith**

Facebook also opposes granting Plaintiff further leave to amend on the ground of undue delay and bad faith. In assessing undue delay, the Court is to consider "whether the moving party knew or should have known the facts and theories raised by the amendment in the original pleading." AmerisourceBergen Corp. v. Dialysist W., Inc., 465 F.3d 946, 953 (9th Cir. 2006) (citations omitted). Where the new facts or theories sought to be included in the amendment were available prior to a previous amendment to the complaint, the court may conclude that the motion to amend was made after undue delay. Chodos, 292 F.3d at 1003 (holding that the district court did not abuse its discretion in finding undue

delay and denying motion for leave to amend where the "new" facts the plaintiff sought to allege were previously available to him).

The record shows that Facebook sent Plaintiff a cease and desist letter in November 2016 accusing him of violating its trademark rights and demanding that he cease using www.shopfacebook.com. Despite his awareness of Facebook's accusations, Plaintiff did not allege any claim in his original complaint, filed in September 2017, that Facebook is foreclosed from asserting its rights under the Lanham Act or to otherwise seek a declaratory judgment of non-infringement. Nor did he include such a claim in his first, second, third or fourth amended complaints filed on September 20, 2017, October 4, 2017, October 25, 2017, and February 20, 2018, respectively. Given this record, the Court finds that Plaintiff has unduly delayed in seeking to include a claim for declaratory judgment. E.g., AmerisourceBergen Corp., 465 F.3d at 953 (noting that an eight month delay between the time of obtaining a relevant fact and seeking leave to amend is unreasonable).

The Court further finds that Plaintiff's request for leave to amend amounts to a bad faith, dilatory tactic. As discussed above, Plaintiff has long known of the facts that form the basis of his claim of non-infringement but failed to allege such a claim in any of the five complaints he has filed. It was not until Facebook filed its present motion to dismiss that Plaintiff sought for the first time to seek relief based on Facebook's 2016 accusation of trademark infringement. Thus, the timing of Plaintiff's request to add a claim for declaratory judgment under the Lanham Act further supports the denial of leave to amend. See Streambend Properties II, LLC v. Ivy Tower Minneapolis, LLC, 781 F.3d 1003, 1015 (8th Cir. 2015) (affirming district court's denial of plaintiff's motion for leave to amend which "appears to have been brought in bad faith and with dilatory motive ... to avoid dismissal…."); Wimm v. Jack Eckerd Corp., 3 F.3d 137, 139-140 (5th Cir. 1993) (affirming the district court's conclusion that the plaintiff's motion was filed in bad faith and with dilatory motive because "[t]he motion [was] obviously interposed by plaintiffs in an attempt to avoid summary judgment," and "[t]he record reflected] that plaintiffs ... had ample opportunity to investigate their claims and to seek leave to amend their complaint");

Quinn for CryptoMetrics, Inc. v. Scantech Identification Beams Sys., LLC, No. 5:13-CV-834-RCL, 2017 WL 2124487, at *2 (W.D. Tex. May 15, 2017) ("The motion for leave to amend was made to avoid this Court's conclusion that the claims against the Stolzar defendants should be dismissed.").

## IV. CONCLUSION

For the reasons stated above,

IT IS HEREBY ORDERED THAT:

1. Defendant's motion to dismiss is GRANTED and the FAC is DISMISSED without leave to amend.

2. Plaintiff's motion for declaratory judgment, which is construed as a motion for leave to amend to allege a claim for declaratory judgment of non-infringement, is DENIED.

IT IS SO ORDERED.

Dated: 5-2-18

SAUNDRA BROWN ARMSTRONG
Senior United States District Judge